WRIGHT, *Appellant*, v. COOPER.

Division One, March 12, 1895.

**Master and Servant:** NEGLIGENCE. An action by an employee for injuries resulting from a fall from a scaffold, claimed to have been caused by defendant's having removed some of the boards therefrom during the day without plaintiff's knowledge, is not sustained where plaintiff testifies that he did not notice any change in the platform, although he worked there all day, and the only evidence in support of plaintiff's charge was defendant's admission that he was having the scaffold torn down without informing plaintiff, it not appearing that the removal was not at some other place than that at which plaintiff fell.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Louis A. Steber* and *Jos. Jecko* for appellant.

(1) The law presumes that the plaintiff was in the exercise of ordinary care, and this presumption is not overcome by the mere fact of injury. *Buesching v. Gaslight Co.*, 73 Mo. 219. (2) The mere fact that an appliance proves to be defective and the servant is injured, does not make out as between master and servant, for the latter, a *prima facie* case of negligence on the part

of the master. But this is not this case. This princi-
ple does not apply where all the details of the construc-
tion of the platform, of its inspection, of its subsequent
demolition, etc., are before the jury, so that the case
does not stand alone on the fact that the plank broke
and the servant was injured. *Bowen v. Railroad*, 95 Mo.
268. (3) Defendant admitted to witness, Mrs. Paxson,
that he ordered the boards removed from the platform,
that plaintiff had not been warned and knew nothing
about this removal. Even if plaintiff did know of this
removal, he had a right to rely on the judgment and
discretion of his master, that he would fully perform
the measure of his duty toward him. *Sullivan v. Rail-
road*, 107 Mo. 66; *Dale v. Railroad*, 63 Mo. 455. Plain-
tiff made a clear *prima facie*, case. *Arkerson v. Denni-
son*, 117 Mass. 407, approved in: *Sullivan v. Railroad*,
107 Mo. 66; *Bowen v. Railroad*, 95 Mo. 277; *Faren v.
Sellers*, 39 La. Ann. 1011.

*Rowell & Ferriss* and *J.H. Zumbalen* for respondent.

(1) The evidence shows that the accident happened
in a place where no danger was to be apprehended, and
was not the result of any want of care on the part of
the defendant. *Railroad v. Duffy*, 35 Ark. 602; *Wil-
liams v. Railroad*, 119 Mo. 316; *Dougan v. Co.*, 56 N.
Y. 1; *Hubbell v. Yonkers*, 104 N. Y. 434; *Sjogren v.
Hall*, 53 Mich. 274; *Swan v. Jackson*, 55 Hun, 194; *Read
v. Nichols*, 7 L. R. A. (N. Y.) 130, and note. (2)
*First*. The plaintiff assumed the risk of the boards upon
the platform being removed or becoming displaced. *Jen-
nings v. Iron Bay Co.*, 47 Minn. 111. *Second*. The evi-
dence discloses that he knew the exact situation at the
time of the accident, or could have known it by the
exercise of ordinary care. In either case he can not
recover. *Jennings v. Iron Bay Co.*, 47 Minn. 111; *Magee*

v. Railroad, 48 N. W. Rep. (Iowa) 92; Bemisch v. Roberts, 21 Atl. Rep. (Pa.) 998; Sykes v. Packer, 99 Pa. St. 465; Sweet v. Coal Co., 47 N. W. Rep. (Wis)182; Platt v. Railroad, 51 N. W. Rep. (Iowa) 254; Boylan v. Brown, 17 N. Y. S. 648; Kossman v. Stutz, 5 N. Y. S. 764. (3) First. There was no evidence offered to sustain the allegation of the petition that the defendant removed the boards from the place where plaintiff was working, without his knowledge. Board v. Pearson, 129 Ind. 456; 2 Wharton on Evidence, sec. 1077. Second. The admissions of a party must be taken as they stand and can not be extended beyond their fair import. Board v. Pearson, 129 Ind. 456.

BRACE, P. J.—This is an action for damages for personal injuries, in which the trial court sustained a demurrer to the evidence, and the plaintiff appeals.

The petition charges that at the time of the injury the plaintiff was in the employ of the defendant, engaged in painting a porch in front of some buildings, then being erected by the defendant, on a platform or scaffold provided for that purpose by the defendant, about seventy-five feet long and elevated above the floor of the porch about four feet; that the covering of this platform or scaffold consisted of boards—two or three boards in thickness; that plaintiff examined said platform, found it safe, and commenced working thereon, and, while so working, the defendant negligently caused some of the boards of said platform to be removed therefrom without notice to plaintiff, who was working at another place on said platform, thereby leaving the place from which such boards were removed of the thickness of only one board, and that board a defective one, knotty and unfit for use. Without knowledge of such removal, the plaintiff, in the course of his work, stepped on the board, and, the board breaking,

he fell, receiving such serious injuries as to cripple and totally disable him for life. The answer denied all the material allegations of the petition and set up a plea of contributory negligence.

The strength of the plaintiff's case is disclosed by the following excerpts from the evidence. The plaintiff testified, in chief, as follows:

"I commenced to paint a little after 5 o'clock on Tuesday, the twenty-eighth, and was told to go to work there and paint by Mr. Cooper himself. Before that I had not touched the platform, and don't know who built it, but saw the foreman around there two or three times; when I went to work that night I just examined that portion of the platform where I was working that night; the next morning I went back to work on the platform again, where I left off the night before, and I examined the platform; then I walked the length of it two or three times and looked it over generally and didn't see anything wrong with it, and went out into the yard and got my shellac or some stuff mixed for me to put on before I put the paint on, and got at the east point of the platform and walked west and then went back over the whole porch and shellaced the knots in the new work I had to paint or prime, and then after I had got the knots shellaced, I went back to my paint pot and started in on the west end of the face of the porch and done that strip east until I came to the end of the facing. It was then about noon. At noon I went and got my dinner and ate in the yard with the rest of the boys and went back and started in and worked on the ceiling from east to west. When I got to the last house it was about 4:30 to 4:45 in the evening. I was painting there and I touched my brush into my pot and went to raise my brush up over my head to do my work, but I didn't turn around, and I fell. I stepped on a board in front of me and it gave

away and let me down. I did not see the board. I saw it was under my feet when I went to paint; I knew there was a board there when I had the brush in my hand, but when I went to put my hand up I knew there was no more platform in front of me and I put my foot on that board and went down through it. The boards and layers of boards were two or three boards thick in some places in the morning, and each board about seven eighths of an inch thick, and some of the lumber was knotty. I didn't know anything after I fell, for a couple of days, until I came to myself at St. Luke's Hospital. I have no recollection of affairs after I went down. When I fell I heard the cracking—the one crack."

The plaintiff on cross-examination, testified as follows:

"The platform was seventy-five or eighty feet long. Some places the boards were two and in other places three boards thick. * * * It was not over three feet wide and about four feet high from the floor. As far as I know at the moment of the accident the boards in that platform were all solid. I examined the platform that day and found the boards two or three boards thick all over it. I went over the top of it and looked underneath it. * * * When I got hurt it was broad daylight, in July, between 4 and 5 o'clock in the evening. * * * I was standing between the post and the wall and I saw there were more boards in front of me· and I reached into my pot and took my brush full of paint and put it overhead, and as I turned to put my right foot there on the last board and it was the board that broke. * * * When I examined it in the morning, the east end of that board, I stepped on last, rested upon the bearing or crosspiece, and I think it did at the time I put my foot on it. It did a little while before that, when I went up and came down

below from the west end; when I got there the other boards joined onto them and lapped over onto them; it was solid then. When I stepped on that board and went down, I think the end of the board rested upon the crosspiece at the end of the board on which I stepped, because I would have noticed if it hadn't. I had not moved a board on that platform that day. * * * I did not see anybody at work on that porch and there was no one working on that end but myself; none that I know of. I don't know if all the boards were nailed. I think the crosspieces were nailed, but I don't know that the boards crossways were nailed on the inside. If a man had shoved them back I would have noticed it. If a man had worked in front of that vestibule I could have seen him. Working here (indicating) I can not very well tell what is going on there (indicating). Such a thing might be done as a man pushing boards there without my noticing it. I inspected the platform and was satisfied it was safe to work on, and it was safe as far as I know, and, as far as I know, no change took place from the time I looked at it until I got hurt. * * * I didn't see anybody meddling with the platform. * * * I worked there all day, except in the afternoon when I went to get a bucket of paint, which took me about ten minutes."

Mrs. Isabella Paxton was then introduced as a witness in behalf of the plaintiff, who testified to two interviews had by her and plaintiff's wife with the defendant, in the first of which the witness asked the defendant if he knew how the accident happened, and he said: "The damned thing gave way and that was all he knew about it." As to the second interview, she testified as follows: "I then spoke up to Mr. Cooper and asked him if he was going to do nothing for that poor family; that from all I understood he was to blame for the accident, and he said people would say

Wright v. Cooper.

anything, and I said, 'Was the platform in a good condition when Wright went on it?', and he said, 'Yes, it was in good condition when he went on it,' and I said, 'I believe you was having it torn down when he was on it,' and he said, 'Yes, I was having it torn down when he was on it,' and I said. 'Did you tell him that,' and he said, 'No, I did not.'"

Arthur Heimburger testified in substance that he was a carpenter, helped build the platform; it was used by the carpenters first and then left for the painters. It was built of sheeting boards, in some places three, and in others two, boards thick. Saw the plaintiff at work during the day; saw him every fifteen or twenty minutes, but did not see him fall; saw a broken board afterward where he fell; did not look to see where it came from; it was a white pine board, seven-eights of an inch thick, crossgrained, with knots running through it. When he fell, Mr. Cooper and another man were in the stone-front house toward the west end; they were finishing the vestibule. Witness knew nothing about the platform being torn down.

Two other witnesses who were working in the building on that day, one a carpenter and the other a painter, were examined, but they did not see the accident, and their evidence throws no additional light upon the issue.

This, with the evidence of the physicians as to the injuries, and of his wife as to the expense incurred by reason thereof, was the substance of the plaintiff's case.

All the evidence tends to show that the platform or scaffold on which the plaintiff was required to work was constructed as such platforms or scaffolds are usually constructed, and was reasonably safe for the place and purposes for which it was to be used; that during the day on which the accident happened the only use

made of it by any person was by the plaintiff in paint-
ing the porch; that defendant and his other workmen
were elsewhere engaged at their work in and about the
buildings. The petition proceeds upon the theory that
the platform was in the first place safe and sufficient,
and the evidence all tends to support it, but that while
the plaintiff was using it in the course of his employ-
ment, defendant wrongfully made it insufficient by
removing some of the boards, without the plaintiff's
knowledge. This is the whole scope of the plaintiff's
charge, and of the cause of action stated in the petition,
and the single question in the case is, was there any
substantial evidence to support it?

The trial court, with much better facilities for re-
alizing the exact situation, and applying the evidence,
than we have, was of the opinion that there was no
such evidence, and we can not say, upon the record
before us, that its conclusion was erroneous. The only
evidence giving any color whatever to the charge is the
parrot-like admissions of the defendant, testified to by
Mrs. Paxton, extracted by her from him in a catechis-
tic examination, evidently conducted for the purpose
of securing some such evidence. But, conceding this
evidence to be wholly true, when considered in con-
nection with the other evidence in the case, it does not
tend to prove that the defendant removed or caused to
be removed any of the boards at the end of the plat-
form where the plaintiff met with the accident. The
uncontradicted evidence is that the plaintiff had been
traversing the platform from end to end during the
whole of the day pursuing his work; that neither he
nor anyone else before the accident saw anyone med-
dling with the platform; that when he started from the
east to paint towards the west on his last trip the plat-
form was in the same condition to all appearances as it
had been from the beginning, and when he was mak-

ing his last trip the defendant and one of his employees was at work in the stone house at a vestibule at or near the west end, so that, if, when the accident happened, the platform was being taken down at all, it must have been at some part over which the plaintiff had already passed, and not at the place where the plaintiff fell, toward which he was facing and where he saw that the platform had not been changed. The judgment of the circuit court is affirmed. All concur.